# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| REACHING SOULS INTERNATIONAL, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-13-1092-D |
| KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services, *et al.*, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM DECISION AND ORDER

Before the Court are Plaintiffs' Motion for Preliminary Injunction [Doc. No. 7] and Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. No. 51]. Plaintiffs' Motion seeks relief pursuant to Fed. R. Civ. P. 65(a) from federal regulations implementing the Affordable Care Act ("ACA")[1] that provide a mechanism for certain religious employers to avoid the mandate to include contraceptive services in group health plan coverage, by executing a required self-certification form. This mechanism – referred to as the "accommodation" – is now codified in 26 C.F.R. § 54.9815-2713A, 29 C.F.R. § 2590.715-2713A, and 45 C.F.R. § 147.131. Defendants' Motion seeks dismissal of the action pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that Plaintiffs lack constitutional standing to challenge the accommodation. The Motions, which are fully briefed and at issue, were the subject of a hearing held December 16, 2013.[2]

---

[1] The Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010).

[2] The purposes of the hearing were to receive any relevant evidentiary materials and to hear oral arguments. The parties elected not to present evidence but, instead, relied on written materials submitted with their briefs, except Plaintiffs provided copies of certain regulations and EBSA Form 700.

**Background**

Plaintiffs Reaching Souls International, Inc. and Truett-McConnell College, Inc. are nonprofit religious organizations that provide benefits to employees through a group health plan sponsored by Plaintiff GuideStone Financial Resources of the Southern Baptist Convention ("GuideStone"). The plan provides group health benefits on a self-insured basis for organizations associated with the Southern Baptist Convention, which share its religious views regarding abortion and contraception, and rely on GuideStone to provide coverage consistent with those views. Defendants are federal agencies and officials responsible for promulgating ACA's implementing regulations.[3] During the rule-making process, the accommodation was adopted as a means for nonexempt religious organizations that provide employee health benefits and have religious objections to some contraceptive methods, to comply with ACA's mandate of contraceptive coverage as a preventive care service for women. *See* 42 U.S.C. § 300gg-13. Plaintiffs' Complaint asserts numerous statutory and constitutional challenges to the accommodation. The primary focus of Plaintiffs' Motion and supporting arguments, however, are the Religious Freedom Restoration Act of 1993 as amended, 42 U.S.C. § 2000bb *et seq*. ("RFRA"), and the Tenth Circuit's decision in *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (10th Cir.), *cert. granted*, 82 U.S.L.W. 3139 (2013). Also, Plaintiffs seek injunctive relief broad enough to protect a putative class of similarly situated employers, as defined in their Complaint. *See* Compl. [Doc. No. 1], ¶ 18.[4]

---

[3] Defendants are: Kathleen Sebelius, Secretary of the United States Department of Health and Human Services; United States Department of Health and Human Services; Thomas E. Perez, Secretary of the United States Department of Labor; United States Department of Labor; Jacob J. Lew, Secretary of the United States Department of the Treasury; and United States Department of the Treasury.

[4] Alternatively, Plaintiffs have filed a Motion for Class Certification [Doc. No. 8] to obtain class-wide relief from enforcement of the contraceptive mandate against similarly situated, nonexempt religious organizations.

Defendants deny this case is controlled by *Hobby Lobby*, which concerned the contraceptive-coverage mandate rather than the accommodation. Defendants concede, however, that this Court is bound by the Tenth Circuit's decision of certain issues and must find in Plaintiffs' favor on parts of the preliminary injunction analysis. Also, if Plaintiffs' Motion is granted, Defendants "do not object to the scope of the resulting preliminary injunction including the named plaintiffs as well as any members of the class plaintiffs have proposed in their complaint." *See* Defs.' Mem. Opp'n Pls.' Mot. Prelim. Inj. [Doc. No. 50], at 40. The focus of Defendants' Motion, and their opposition to Plaintiffs' Motion for Preliminary Injunction, is a contention that the accommodation will not result in actual injury to Plaintiffs (as required for standing) or substantially burden their religious beliefs (as required to succeed under RFRA). Defendants do not question the sincerity of Plaintiffs' stated beliefs, but Defendants instead argue that any burden on those beliefs is either illusory, speculative, or *de minimis*, for reasons explained *infra*.

**Findings of Fact**

Many facts relevant to the Court's analysis of the Motions are undisputed. Because the allegations of the Complaint and statements in affidavits regarding Plaintiffs' organizational structure, religious character, and religious beliefs are unchallenged, they are accepted as true for present purposes.

The Southern Baptist Convention is an association of Christian churches that share common religious beliefs, including support for the sanctity of human life from conception to natural death, and opposition to abortion and abortion-inducing drugs. GuideStone is a nonprofit corporation formed and controlled by the Southern Baptist Convention; it is a tax-exempt church benefits board that assists churches and other religious organizations by facilitating retirement plan services, health benefits coverage, risk management, and other benefit programs. GuideStone established the

3

GuideStone Plan as a multiple-employer, self-insured health plan that qualifies as a "church plan" and thus is not subject to ERISA.[5] Consistent with the religious convictions of the Southern Baptist Convention, the GuideStone Plan does not cover expenses associated with the elective termination of a pregnancy, including contraceptive drugs or devices considered to be abortifacients. GuideStone has agreements with two corporations, one of which is Highmark Health Services, to provide claims administration services.

Reaching Souls International, Inc. ("Reaching Souls") is a nonprofit corporation founded by a Southern Baptist minister for an evangelical purpose. Its principal officers are Southern Baptist ministers and its faith-based ministry includes training and support for missionaries in Africa, India, and Cuba and an orphan-care program. Truett-McConnell College, Inc. ("Truett-McConnell") is a nonprofit corporation owned by the Georgia Baptist Convention that operates a private, Christian liberal arts college. Both organizations have adopted the GuideStone Plan as a means to provide comprehensive health care benefits for their employees. Reaching Souls has approximately 10 full-time employees; Truett-McConnell has approximately 80 full-time employees. Neither organization qualifies for ACA's "religious employer" exemption, *see* 45 C.F.R. §§ 147.130(a)(1)(iv)(B), 147.131(a); and the GuideStone Plan does not qualify for ACA's "grandfathered" health plan exemption, *see* 26 C.F.R. § 54.9815-1251T.

Although the parties disagree whether the contraceptive drugs to be covered under ACA's mandate are abortifacients, it is undisputed that Plaintiffs oppose providing coverage for the same contraceptive methods at issue in *Hobby Lobby*, 723 F.3d at 1123, 1125, on account of religious objections. Thus, under the challenged regulations, Reaching Souls, Truett-McConnell, and other

---

[5] The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*. The definition of "church plan" appears at § 1002(33); the exemption appears at § 1003(b)(2).

4

similarly-situated employers would qualify as an "eligible organization" for the accommodation if they execute the required self-certification form and provide it to a third party administrator ("TPA") for the GuideStone Plan. *See* 26 C.F.R. § 54.9815-2713A(a)-(b); 29 C.F.R. § 2590.715-2713A(a)-(b); 45 C.F.R. § 147.131(b). Under the accommodation process contemplated by the regulations, a TPA receiving notice of self-certification would provide or arrange payments for mandated contraceptive services (including those objected to by Plaintiffs), and could seek reimbursement for the covered services plus an additional "allowance for administrative costs and margin" of at least 10 percent of total payments. *See* 45 C.F.R. § 156.50(d)(3)(ii). The TPA would also provide notice to plan participants and beneficiaries of the availability of contraceptive coverage, without cost sharing. *See* 26 C.F.R. § 54.9815-2173A(d); 29 C.F.R. § 2590.715-2173A(d).

Reaching Souls, Truett-McConnell, and other employers who have adopted the GuideStone Plan face a deadline of January 1, 2014, to elect among four alternatives: 1) discontinue participation in the GuideStone Plan and secure alternative coverage that complies with ACA's contraceptive mandate; 2) violate the mandate and incur penalties of $100 per day for each affected individual, *see* 26 U.S.C. § 4980D(b)(1); 3) discontinue all health plan coverage for employees;[6] or 4) self-certify that the organization qualifies for the accommodation. Similarly, GuideStone must decide by December 31, 2013, whether to: 1) do nothing and expose nonexempt employers to ACA penalties for failing to provide contraceptive coverage under the GuideStone Plan, unless the employers discontinue participation in the plan; 2) assist eligible organizations with the accommodation process; or 3) discontinue coverage under the GuideStone Plan for organizations

---

[6] All Plaintiffs state that their religious beliefs require them to provide health care coverage for employees, as a matter of value and respect for employees and commitment to the well-being of employees and their families. Cancellation of health coverage would also subject a "large employer" like Truett-McConnell to an annual penalty of $2,000 per full-time employee. *See* 26 U.S.C. § 4980H(a), (c)(1)-(2).

5

that do not satisfy ACA's "religious employer" exemption. It is undisputed that complying with the mandate, incurring penalties for noncompliance, or discontinuing coverage would cause actual injury to Plaintiffs and substantially burden their religious beliefs. The questions presented – for purposes of standing and success under RFRA – involve only the impact of the accommodation on eligible organizations that participate in the GuideStone Plan.

All Plaintiffs have presented statements regarding their religious beliefs that reflect religious objections to participating in the accommodation process. Plaintiffs believe that executing the self-certification form, or otherwise assisting in the implementation of ACA's contraceptive mandate, would cause them to facilitate contraceptive coverage and would violate sincere religious principles.

## Motion to Dismiss

### A. Standard of Decision

Standing to sue is a jurisdictional issue properly raised by a Rule 12(b)(1) motion. *See Wilderness Society v. Kane County*, 632 F.3d 1162, 1168 (10th Cir. 2011) (en banc); *see also Colorado Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004). Defendants' Motion also raises a factual attack on jurisdiction, that is, Defendants "go beyond the allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1303 (10th Cir. 2001) (internal quotation omitted). Defendants contend the injury alleged in the Complaint – requiring Plaintiffs to trigger or facilitate coverage for contraceptive services – does not actually exist and "there is absolutely no connection between plaintiffs and contraceptive coverage" under the accommodation. *See* Defs.' Mot. Dism. [Doc. No. 51] at 18.

"In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited

evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *see E.F.W.*, 264 F.3d at 1303 (internal quotation omitted). In the context of this case, however, there are no disputed jurisdictional facts. As discussed *infra*, Defendants' Motion is based on a contention that the challenged regulations do not have the legal effect alleged by Plaintiffs and, even if Plaintiffs could establish their factual allegations, they cannot show an injury that would establish standing. Therefore, Defendants' Motion may properly be resolved under Rule 12(b)(1).[7]

**B.     Plaintiffs' Standing**

Defendants' Motion challenges Plaintiffs' Article III standing. To overcome the Motion, Plaintiffs "must show an injury that is '[1] concrete, particularized, and actual or imminent; [2] fairly traceable to the challenged action; and [3] redressable by a favorable ruling.'" *Hobby Lobby*, 723 F.3d at 1126 (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013)) (internal quotation omitted). The first element requires that Plaintiffs "must have suffered an 'injury in fact' – an invasion of a legally protected interest." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The asserted injury in this case flows from the accommodation's requirement that eligible religious organizations, like Reaching Souls and Truett-McDonnell, must execute the self-certification form and initiate a process by which contraceptive services that they oppose on

---

[7] Under the law of this circuit, a Rule 12(b)(1) motion that raises a factual attack on subject matter jurisdiction must be converted to a Rule 56 motion for summary judgment "when resolution of the jurisdictional question is intertwined with the merits of the case." *See Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995); *see also Los Alamos Study Group v. United States Dep't of Energy*, 692 F.3d 1057, 1063-64 (10the Cir. 1012). In this case, however, Defendants maintain that the jurisdictional issue of standing may be resolved "on the pleadings, documents incorporated by reference into the complaint, and judicially noticeable matters – all of which the Court may consider in reviewing defendants' motion to dismiss." *See* Defs.' Reply Supp. Mot. Dism. [Doc. No. 59] at 2-3. Thus, the Court finds no need to treat Defendants' Motion as a summary judgment motion. Further, any factual disputes are not germane to the Court's jurisdictional analysis, discussed *infra*.

religious grounds may be provided free of charge to female employees and dependents who are health plan beneficiaries. Defendants' position in this case is that a TPA of a church plan, like the GuideStone Plan, is not required to cover contraceptive services because ERISA provides the only implementing or enforcement authority for the accommodation, and church plans are not subject to ERISA. Defendants thus argue that the accommodation regulations do not apply to the GuideStone Plan as a matter of law, and Plaintiffs' (or a TPA's) mistaken legal view that the regulations do apply cannot create an actual or imminent injury. Defendants' litigation position in this case has been taken in only one other case for which a written decision is available, *Roman Catholic Archdiocese of New York v. Sebelius*, No. 12 Civ. 2542, 2013 WL 6579764, *6 (E.D.N.Y Dec. 16, 2013) (to be published), and was first asserted on October 31, 2013. *See* Defs.' Resp. Pls.' Mot. Accelerated Briefing Sched. [Doc. No. 19] at 2-3 n.1. Upon consideration, the Court is not persuaded that Defendants' position deprives Plaintiffs of standing.

Plaintiffs' religious beliefs – the sincerity of which is unchallenged – prevent them from participating in a regulatory process designed to provide health care coverage that they oppose on religious grounds, even if the extent of their participation is taking the first step required by the regulations and permitting the remaining process to play out through other actors. By signing the form, an eligible organization self-certifies that it qualifies for the accommodation and, thus, that its employees and their dependents qualify for contraceptive coverage outside of their health plan. After signing the self-certification form, Plaintiffs must provide it to a TPA for the GuideStone Plan in order to satisfy ACA's contraceptive mandate through the accommodation process formulated by Defendants to extend contraceptive coverage to employees of nonexempt religious organizations. The self-certification form itself notifies a TPA of the obligations set forth in federal regulations regarding the accommodation. These obligations include providing written notice to health plan

8

participants and beneficiaries of the availability of contraceptive coverage without cost sharing. Regardless whether the notice actually results in the provision of contraceptive services to which Plaintiffs object, the accommodation requires that Plaintiffs either participate in a procedure devised by federal officials to implement ACA's mandate of contraceptive coverage, or incur substantial penalties. Either spiritual or financial harm is sufficient, by itself, to establish an actual injury, traceable to Defendants, and redressable by a ruling in Plaintiffs' favor.

The Court reaches the same conclusion as the district judge in *Roman Catholic Archdiocese of New York*, the Honorable Brian M. Cogan, who capably expressed the analysis of Plaintiffs' injury-in-fact:

> [P]laintiffs' alleged injury is that the [accommodation] renders them complicit in a scheme aimed at providing coverage to which they have a religious objection. This alleged spiritual complicity is independent of whether the scheme actually succeeds at providing contraceptive coverage. It is undisputed that all of the non-exempt plaintiffs will still have to either comply with the Mandate and provide the objectionable coverage or self-certify that they qualify for the accommodation. Plaintiffs allege that their religion forbids them from completing this self-certification, because to them, authorizing others to provide services that plaintiffs themselves cannot is tantamount to an endorsement or facilitation of such services. Therefore, regardless of the effect on plaintiffs' TPAs, the regulations still require plaintiffs to take actions they believe are contrary to their religion.

*Roman Catholic Archdiocese of New York*, 2013 WL 6579764 at *7 (citations omitted).

In short, the alleged fact that the accommodation requires Plaintiffs to take action that is repugnant to their sincere religious beliefs constitutes a sufficient injury to satisfy the constitutional minimum of standing. Therefore, the Court finds that Plaintiffs have standing to challenge the accommodation.

**Motion for Preliminary Injunction**

To prevail on their Motion, Plaintiffs must establish: a) they are likely to succeed on the merits; b) they are likely to suffer irreparable harm in the absence of preliminary relief; c) the

9

balance of equities tips in their favor; and d) an injunction is in the public interest. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011); *see also Hobby Lobby*, 723 F.3d at 1128. In this federal circuit, courts generally apply a modified standard under which, if a movant establishes that other requirements tip strongly in his favor, the movant "may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1255-56 (10th Cir.2003); *see O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004) (en banc), *aff'd sub nom.*, 546 U.S. 418 (2006). The modified standard does not apply, however, to certain types of "historically disfavored" preliminary injunctions. *See O Centro*, 389 F.3d at 975; *see also Attorney General v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). Also, the modified standard does not apply where the movant seeks "to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme." *See Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003); *see also Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1298 n.6 (10th Cir. 2006); *Aid for Women v. Foulston*, 441 F.3d 1101, 1115 (10th Cir. 2006). Courts "presume that all governmental action pursuant to a statutory scheme is 'taken in the public interest.'" *See Aid for Women*, 441 F.3d at 1115 n.15.

In this case, Plaintiffs are seeking to restrain action of federal agencies taken in the public interest, and therefore, the modified standard does not apply. Thus, Plaintiffs "must meet the traditional 'substantial likelihood of success' standard." *Nova Health Sys.*, 460 F.3d at 1298 n.6.

A.  **Likelihood of Success on the Merits**

RFRA prohibits the federal government from substantially burdening a person's exercise of religion, unless the government demonstrates that the application of the burden to the person is the least restrictive means of furthering a compelling governmental interest. *See* 42 U.S.C. § 2000bb-1. To establish a claim under RFRA, a plaintiff must prove "the following three elements: (1) a substantial burden imposed by the federal government on a (2) sincere (3) exercise of religion." *Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001); *see Hobby Lobby*, 723 F.3d at 1125-1126. The burden then shifts to the government, even at the preliminary injunction stage, to show that the compelling interest test is satisfied. *See Hobby Lobby*, 723 F.3d at 1126; *see also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). There is no question in this case that Plaintiffs' religious beliefs are sincere and that their opposition to ACA's contraceptive mandate is a religious exercise. Defendants also concede that, under the holding of *Hobby Lobby*, the federal government cannot satisfy the compelling interest test. *See* Defs.' Mem. Opp'n Pls.' Mot. Prelim. Inj. [Doc. No. 50], at 21. Thus, Plaintiffs' likelihood of success on the merits of their RFRA claim hinges on their ability to establish a substantial burden.

> According to the Tenth Circuit, the substantial burden test has three prongs:
>
> [A] government act imposes a "substantial burden" on religious exercise if it: (1) "requires participation in an activity prohibited by a sincerely held religious belief," (2) "prevents participation in conduct motivated by a sincerely held religious belief," or (3) "places substantial pressure on an adherent . . . to engage in conduct contrary to a sincerely held religious belief."

*Hobby Lobby*, 723 F.3d at 1138 (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010)). The court of appeals found in *Hobby Lobby* that ACA's coverage mandate substantially burdens the religious exercise of persons who oppose covered contraceptive services on religious grounds under the third, "substantial pressure" prong. Although *Hobby Lobby* is factually

11

distinguishable, the court of appeals' decision teaches the proper framework for a "substantial pressure" analysis.

"First, we must identify the religious belief in this case." *Id*. at 1140. Like the corporate employers in *Hobby Lobby*, Plaintiffs have religious objections to contraceptive methods that they believe cause the death of a fertilized human embryo, and to providing access to or otherwise supporting contraceptive services related to these methods. Further, in this case, Plaintiffs assert that "as a matter of religious faith, Plaintiffs may not participate in any way in the government's program to provide access to these services." *See* Pls.' Mot. Prelim. Inj. [Doc. No. 7] at 11; *see also* Compl. [Doc. No. 1], ¶¶ 177-78. Defendants dispute whether the specific tasks to which Plaintiffs object, such as signing the self-certification form or providing it to a TPA, constitute "participation" in the program or facilitate access to contraceptive services, but Defendants acknowledge the strength of Plaintiffs' opposition to ACA's contraceptive mandate and the faith-based nature of their opposition.

"Second, we must determine whether this belief is sincere." *Hobby Lobby*, 723 F.3d at 1140. Here, as in *Hobby Lobby*, Plaintiffs' sincerity is unquestioned.

"Third, we turn to the question of whether the government places substantial pressure on the religious believer." *Id*. Here, as in *Hobby Lobby*, Plaintiffs contend that the pressure on their religious beliefs is substantial because participation in the accommodation would violate their beliefs, but refusing to participate will expose them to substantial financial penalties or losses. In response, Defendants contend Plaintiffs' view that participating in the accommodation – by self-certifying their eligibility and providing the self-certification form to a TPA – is legally flawed and misguided because their participation would not actually facilitate access to contraceptive coverage for participants and beneficiaries of the GuideStone Plan. Because, according to Defendants, the accommodation does not apply to church plans and a TPA under the GuideStone Plan need not offer

12

or provide contraceptive coverage, Plaintiffs' self-certification forms would not actually trigger the accommodation process or carry out ACA's contraceptive mandate, and, thus, Plaintiffs' opposition to signing the form is unfounded.

Upon consideration, the Court finds Defendants' argument to be simply another variation of a proposition rejected by the court of appeals in *Hobby Lobby*. In that case, the government argued that complying with the contraceptive mandate was not a substantial burden on the employers' beliefs because the burden arose from the independent acts of third parties, such as employees or dependents who utilized the coverage. This argument was found to be "fundamentally flawed because it advances an understanding of 'substantial burden' that presumes 'substantial' requires an inquiry into the theological merit of the belief in question rather than the *intensity of the coercion* applied by the government to act contrary to those beliefs." *Id*. at 1137 (emphasis in original). The court determined that the question for decision was "not whether the reasonable observer would consider the plaintiffs complicit in an immoral act, but rather how the plaintiffs themselves measure their degree of complicity." *Id*.

In this case, Plaintiffs have measured their complicity in facilitating ACA's contraceptive mandate and determined that participating in the accommodation would endorse contraceptive services they deem morally problematic. As discussed *supra*, Plaintiffs' religious beliefs do not permit them to take the affirmative steps necessary to qualify their employees for certain contraceptive services under ACA's coverage scheme. Regardless whether the self-certification form actually results in the provision of such contraceptive coverage or services,[8] Plaintiffs believe

---

[8] Evidence was presented by Plaintiffs, without effective response by Defendants, that the largest GuideStone TPA, Highmark Inc. ("Highmark"), will provide the objected-to contraceptives upon receipt of the self-certification form. *See* Pls.' Combined Reply Br., Ex. 1, Ormont Decl. [Doc. No. 56-1]. Defendants'
(continued...)

13

that the acts of executing the form and providing it to a TPA convey support for the accommodation program and its goal of carrying out ACA's contraceptive mandate. The self-certification form states it certifies that the organization's health plan qualifies for the accommodation with respect to the mandate, and it provides notice to a TPA of obligations under the accommodation regulations. In addition, the model language of the written notice that a TPA must give to plan beneficiaries states that their employer has provided the certification, and so separate contraceptive coverage is available from a third party. *See* 26 C.F.R. § 54.9815-2713A(d). Further, as noted, at least one TPA for GuideStone, Highmark, has adopted a plan to carry out the accommodation. Regardless whether Highmark is compelled to comply or does so voluntarily, Plaintiffs' concern for apparent complicity in the accommodation is not unfounded. In short, this Court, like Judge Cogan, rejects Defendants' "it's just a form" argument. *See Roman Catholic Archdiocese of New York*, 2013 WL 6579764 at *14.

Under *Hobby Lobby*, the Court's "only task is to determine whether the claimant's belief is sincere, and if so, whether the government has applied substantial pressure on the claimant to violate that belief." *Hobby Lobby*, 723 F.3d at 1137. Upon consideration of the record, the Court finds the accommodation scheme applies substantial pressure on Plaintiffs to violate their belief that participating in or facilitating the accommodation is the moral equivalent of directly complying with the contraceptive mandate. By refusing to participate, Reaching Souls, Truett-College, and similarly situated organizations face substantial financial penalties, and their refusal will cause a substantial financial loss to GuideStone if it excludes nonexempt, noncompliant organizations from the

---

[8](...continued)
litigation position that there is no ERISA enforcement mechanism regarding self-insured church plans utterly fails to address the real potential for voluntary compliance by TPAs such as Highmark.

14

GuideStone Plan. Here, as in *Hobby Lobby*, the Court finds that Plaintiffs have made a threshold showing of a substantial burden, and, thus, a likelihood of success on their RFRA claim.[9]

B. **Remaining Requirements**

The Tenth Circuit has held that "establishing a likely RFRA violation satisfies the irreparable harm factor." *Hobby Lobby*, 723 F.3d at 1146; *see Kikumura*, 242 F.3d at 963. The Court further finds that the harm to Plaintiffs without the injunction outweighs any harm to Defendants' interest in carrying out the accommodation. As noted in *Hobby Lobby*, the government has already granted an exemption from the contraceptive mandate to many religious organizations, and only a small number of contraceptive services covered by the mandate are at issue. In addition, the government has taken the position in this case that the accommodation is not enforceable against the GuideStone Plan anyway. On the other hand, Plaintiffs face the real dilemma of violating their religious beliefs or incurring financial penalties. Finally, in light of the current legal uncertainty regarding the enforceability of the contraceptive mandate in light of *Hobby Lobby* and other federal appellate decisions, the Court finds that the public interest lies in preserving the status quo and preventing enforcement of the accommodation until Plaintiffs' claims are resolved.

**Conclusion**

In summary, the Court concludes that Plaintiffs have satisfied their burden to establish standing to challenge the accommodation and that a preliminary injunction should issue to prevent the federal government from enforcing the accommodation and contraceptive mandate against them.[10]

---

[9] In light of this conclusion, the Court need not reach the First Amendment claims on which Plaintiffs also rely in their Motion.

[10] Plaintiffs have offered to provide security, as required by Fed. R. Civ. P. 65(c), by posting a bond
(continued...)

# ORDER

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Preliminary Injunction [Doc. No. 7] is GRANTED, and that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. No. 51] is DENIED. The following preliminary injunction is issued:

# PRELIMINARY INJUNCTION

Defendants, their agents, officers, and employees are hereby enjoined and restrained from taking any enforcement action against Plaintiffs, or any employers who provide medical coverage to employees under the GuideStone Plan and who are "eligible organizations" as defined by 26 C.F.R. § 54.9815-2713A(a), 29 C.F.R. § 2590.715-2713A(a), and 45 C.F.R. § 147.131(b), for not providing coverage for contraceptive services as required by 42 U.S.C. § 300gg-13(a)(4) and related regulations, including any penalties, fines and assessments for noncompliance with that statute, until further order of the Court.

IT IS SO ORDERED this 20th day of December, 2013.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[10](...continued)
in an amount to be determined by the Court. Defendants have not requested security, and this issue was not addressed in further briefing or argument. In this circuit, "trial courts have 'wide discretion under Rule 65(c) in determining whether to require security.'" *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009) (quoting *Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003)). Under the circumstances presented, the Court finds that Defendants are unlikely to suffer monetary harm if it is later determined they were wrongfully enjoined, and thus, no security is necessary.