# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| REACHING SOULS INTERNATIONAL, INC., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>HARGAN, *et al.*,<br><br>*Defendants*. | Case No. 5:13-cv-01092-D<br><br>**PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION AND DECLARATORY RELIEF, AND BRIEF IN SUPPORT** |

This case involves a challenge to a federal regulation ("the mandate") that requires Plaintiffs to choose between violating their religious beliefs about the sanctity of life and paying millions of dollars in yearly fines. Defendants ("the government") have now admitted that this mandate violates the Religious Freedom Restoration Act ("RFRA"). Therefore, this Court should convert its existing preliminary injunction into a permanent injunction and declaratory relief so that Plaintiffs can dismiss their remaining claims and end this litigation.

## BACKGROUND

### A.  The Affordable Care Act and the mandate

The Affordable Care Act ("ACA") provision at issue here mandates that any "group health plan" must provide for certain "preventive care" without "any cost sharing." 42 U.S.C. § 300gg-13(a). The Department of Health and Human Services ("HHS") defined women's preventive services to include all FDA-approved contraceptive methods, including "emergency contraception" such as Plan B and ella, which—according to the FDA's Birth Control Guide—work by preventing implantation "of a fertilized egg in the uterus."

The government offered exemptions from this rule to many health plans, including grandfathered plans, *see* 42 U.S.C. § 18011 (2010), employers with fewer than fifty employees,

*see* 26 U.S.C. § 4980H(c)(2)(A); 26 U.S.C. § 4980D(d), and "religious employers" defined by the government to narrowly include institutional churches and their dependent organizations, 78 Fed. Reg. 39,870, 39,874 (July 2, 2013); 45 C.F.R. § 147.131(a) (currently reserved pending the outcome of the new Interim Final Rule, *see infra*).

Instead of offering Plaintiffs the same exemption available to churches, the government created what it called an "accommodation," which required Plaintiffs to allow their third-party administrators ("TPA") to provide the objectionable contraceptives to Plaintiffs' employees through Plaintiffs' existing health plans. 77 Fed. Reg. 16,501, 16,503 (March 21, 2012). Plaintiffs could not in good conscience take this action. Nor could they leave their employees without health insurance and pay the requisite fines. *See, e.g.*, 26 U.S.C. § 4980D(b)(1) ($100/day per person for any non-exempt employer that provides a health plan that does not include coverage for objectionable contraceptives); 26 U.S.C. § 4980H(c)(1) ($2000 per employee, per year for any large employer that does not provide a health plan). Thus, Plaintiffs had no choice but to file suit.

### B. Plaintiffs' lawsuit

Plaintiffs Reaching Souls International, Inc., and Truett-McConnell College, Inc., are not-for-profit religious ministries that object to the mandate, and who have obtained health benefits through Plaintiff GuideStone Financial Resources of the Southern Baptist Convention to ensure that those benefits are provided in a manner consistent with their religious beliefs. GuideStone is a self-insured church plan that was formed by the Southern Baptist Convention to provide benefits for ministers and denominational workers of organizations that are controlled by or associated with the Southern Baptist Convention. *See* 29 U.S.C. § 1002(33) (noting that a "church plan" is a benefit plan established by a church or a convention or association of churches to serve its employees and other nonprofit religious organizations that share "common religious bonds and convictions").

GuideStone serves more than 185 such ministry organizations, which are represented as a putative class by Plaintiffs Reaching Souls and Truett-McConnell College. Dkt. 7-1 ¶ 31. All member organizations are religious ministries that have religious objections to the mandate and to the accommodation scheme. Because they refused to comply with the mandate or the accommodation scheme, the Plaintiffs faced massive fines that would have crippled or shuttered their ministries. *See* Dkt. 7-1 ¶¶ 35, 43 (estimating that class members face penalties of $187,756,000 per year, and that GuideStone faces losses of $39,088,325 in medical plan contributions).

Plaintiffs filed suit on October 11, 2013. Their complaint includes sixteen claims. Dkt. 1. Beyond their RFRA claim, Plaintiffs have claims under the Establishment and Free Exercise Clauses (Counts II-VI, XI, and XV), the Free Speech Clause (Counts IX-XI), the First and Fifth Amendments (Counts VII-VIII), and the Administrative Procedure Act (Counts XII-XVI). On October 25, 2013, Plaintiffs sought a preliminary injunction from this Court protecting all GuideStone plan members, arguing that the mandate violated the Religious Freedom Restoration Act ("RFRA") for the reasons set forth in *Hobby Lobby v. Sebelius*, 723 F.3d 1114 (10th Cir. 2013) (en banc) *aff'd sub. nom. Burwell v. Hobby Lobby*, 134 S. Ct. 2751, 2785 (2014). *See* Dkt. 7 (motion for preliminary injunction). The government opposed the motion, but did "not object to the scope of the resulting preliminary injunction including the named plaintiffs as well as any members of the class plaintiffs have proposed in their complaint." Dkt. 50 at 40.

### C.  This Court's decision granting a preliminary injunction

As the Tenth Circuit explained in *Hobby Lobby*, RFRA prevents the government from placing a substantial burden on a sincere exercise of religion where the government cannot show that the burden is the least restrictive means of accomplishing a compelling government interest. 723 F.3d at 1125-26. This Court found that there is "no question" that Plaintiffs' religious beliefs are sincere

and that abstaining from obeying the mandate "is a religious exercise." *Reaching Souls*, 2013 WL 6804259, at *6. Likewise, the Court ruled that the government had conceded that, under the Tenth Circuit's ruling in *Hobby Lobby*, it "cannot satisfy the compelling interest test." *Id.* (citing Dkt. 50 at 21). Finally, the Court found that, on the undisputed facts before the Court, Plaintiffs faced a substantial burden because the "accommodation scheme applies substantial pressure on Plaintiffs to violate their belief[s]" as result of the "substantial financial penalties" and "substantial financial loss" they faced for noncompliance with the scheme. *Id.* at *8. Accordingly, this Court entered a preliminary injunction that enjoined the government from "taking any enforcement action against Plaintiffs, or any employers who provide medical coverage to employees under the GuideStone Plan[.]" *Id.* The government appealed. This Court stayed the litigation pending resolution of the appeal. *Reaching Souls Int'l v. Sebelius*, 2014 WL 931440 (W.D. Okla. March 10, 2014).

### D.  The government's appeal

On appeal, the government initially argued that Plaintiffs' substantial burden arguments were "fundamentally mistaken" because the government did not view the Plaintiffs' required actions under the accommodation as triggering coverage of objectionable services in association with Plaintiffs' health plans. Gov't Suppl. Br. at 2-3, *Little Sisters of the Poor, et. al. v. Burwell*, 794 F.3d 1151 (10th Cir. 2015) (Nos. 13-540, 14-6026, 14-6028). A divided panel of the Tenth Circuit accepted the government's argument. *Little Sisters of the Poor v. Burwell*, 794 F.3d 1151, 1169 (10th Cir. 2015), *vacated and remanded sub nom. Zubik v. Burwell*, 136 S. Ct. 1557 (2016). Two months later, the Tenth Circuit *sua sponte* took a poll to consider en banc rehearing, which was denied over the dissent of five judges who believed that it could not be "any clearer" that the mandate impermissibly "burdens the plaintiffs' free exercise of religion." *Little Sisters of the Poor v. Burwell*, 799 F.3d 1315, 1317-18 (10th Cir. 2015) (Hartz, J., dissenting from denial of rehearing

en banc; joined by Kelly, Tymkovich, Gorsuch, and Holmes) (predicting that the panel opinion "will not long survive" because it is "clearly and gravely wrong" and "contrary to all precedent concerning the free exercise of religion." *Id.* at 1316, 1318.).

### E.  The Supreme Court litigation

At the Supreme Court, the government changed its position from the argument on which the Tenth Circuit majority relied. The government admitted that the accommodation required contraceptive coverage to be "part of the same plan as the coverage provided by the employer," Br. for the Resp'ts at 38, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418) (quotations omitted). *See also* Tr. of Oral Arg. at 60-61, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418) (Chief Justice Roberts: "You want the coverage for contraceptive services to be provided, I think as you as it said, seamlessly. You want it to be in the one insurance package. . . . Is that a fair understanding of the case?"; Solicitor General Verrilli: "I think it is one fair understanding of the case."); *id*. at 61 (government "would be content" if Court would "assume a substantial burden" and rule only on the government's strict scrutiny affirmative defense).

The government also made admissions to the Supreme Court that further undermined the strict scrutiny defense that it had already conceded to this Court. The government admitted that it does not matter where the contraceptive coverage comes from and that women who do not receive the coverage from their employer can "ordinarily" get it from "a family member's employer," "an Exchange," or "another government program." Gov't Br. at 65, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418). The government also admitted that the mandate "could be modified" to avoid forcing religious groups to carry the coverage, Gov't Suppl. Br. at 14-15, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418), undermining its least restrictive means defense.

As a result of these concessions, the Supreme Court unanimously vacated the Tenth Circuit

panel decision, along with decisions of the other Courts of Appeals. *Zubik*, 136 S. Ct. at 1560-61. It held that "the Government may not impose taxes or penalties on petitioners for failure to provide the relevant notice" and remanded the cases to the Courts of Appeals so that the parties could be "afforded an opportunity to arrive at an approach going forward" that both "accommodates [the religious employers'] religious exercise" and ensures that "women covered by [their] health plans 'receive full and equal health coverage, including contraceptive coverage.'" *Id.*

### F.  The Interim Final Rules

Per the Supreme Court's instruction, the parties returned to the lower courts and conferred about possible resolutions that would not violate plaintiffs' religious liberty. On May 4, 2017, President Trump issued an Executive Order entitled "Promoting Free Speech and Religious Liberty," which instructed the government to "consider issuing amended regulations . . . to address conscience-based objections" to the challenged mandate. Exec. Order No. 13,798, 82 Fed. Reg. 21,675 (May 4, 2017).

Five months later, the government issued an Interim Final Rules (IFR) revising its accommodation. 82 Fed. Reg. 47,792 (Oct. 13, 2017). Citing its prior concessions to the Supreme Court, the government concluded that requiring objecting religious organizations to comply with the mandate "constituted a substantial burden on the religious exercise" of objecting religious organizations. *Id.* at 47,806, 47,809. Since requiring "compliance through the mandate or accommodation . . . did not serve a compelling interest and was not the least restrictive means of serving a compelling interest," the government concluded that "requiring such compliance led to the violation of RFRA in many instances." *Id.* at 47,806. In order to genuinely accommodate religious organizations' objections, the government expanded the "religious employer" exemption to the mandate to include "all bona fide religious objectors." *Id.*

At least eight lawsuits have since been filed challenging the IFR, arguing that it is unconstitutional and seeking injunctions prohibiting the government from enforcing its expanded religious exemption.[1] On December 15, 2017, the Eastern District of Pennsylvania issued a preliminary injunction against the expanded religious exemption on the grounds that the government likely issued the IFR without following the procedures required by the Administrative Procedure Act (APA). *Pennsylvania v. Trump*, No. 2:17-cv-4540, 2017 WL 6398465 (E.D. Pa. Dec. 15, 2017). The Northern District of California issued a second nationwide injunction, also on APA grounds. *California v. HHS*, No. 4:17-cv-5783, 2017 WL 6524627 (N.D. Cal. Dec. 21, 2017).

Both courts suggested that their APA rulings should not impact existing litigation, leaving this Court free to rule in Plaintiffs' specific case. *Pennsylvania*, 2017 WL 6398465, at *21; *California*, 2017 WL 6524627, at *17; *see also* Opinion Denying Motion to Intervene, *Pennsylvania v. Trump*, No. 2:17-cv-4540, 2017 WL 6206133 (E.D. Pa. Dec. 8, 2017) (denying intervention to religious objector in challenge to IFR in part because intervenor "has the option of seeking recourse through its own lawsuit, . . . which, while currently stayed, remains open").

## ARGUMENT

To obtain a permanent injunction, Plaintiffs must prove: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that

---

[1] *See ACLU v. Wright*, No. 4:17-cv-5772 (N.D. Cal. filed Oct. 6, 2017); *California v. HHS*, No. 4:17-cv-5783 (N.D. Cal. filed Oct. 6, 2017); *Massachusetts v. HHS*, No. 1:17-cv-11930 (D. Mass. filed Oct. 6, 2017); *Washington v. Trump*, No. 2:17-cv-01510 (W.D. Wash. filed Oct. 9, 2017); *Medical Students for Choice v. Wright*, No. 1:17-cv-2096 (D.D.C. filed Oct. 10, 2017) (voluntarily dismissed); *Pennsylvania v. Trump*, No. 2:17- cv-4540 (E.D. Pa. filed Oct. 11, 2017); *Campbell v. Trump*, No. 1:17-cv-2455 (D. Colo. filed Oct. 13, 2017); *Shiraef v. Hargan*, No. 3:17-cv-0817 (N.D. Ind. filed Oct. 31, 2017) (voluntarily dismissed); *see also* Press Release, American Civil Liberties Union, *ACLU Filing Lawsuit Challenging Trump Administration Contraceptive Coverage Rule* (Oct. 6, 2017), https://www.aclu.org/news/aclu-filing-lawsuit-challenging-trump-administration-contraceptive-coverage-rule (linking copy of ACLU's complaint against IFR).

the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014). This is "remarkably similar" to the preliminary injunction standard; the "only measurable difference" being that Plaintiffs must show "actual success on the merits" instead of a "substantial likelihood of success." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007).

Declaratory relief "does not share injunctive relief's requirement of irreparable harm" and may be issued in order to "clarify the relations between the parties and eliminate the legal uncertainties that gave rise to . . . litigation." *Levin v. Harleston*, 966 F.2d 85, 90 (2d Cir. 1992); *see also* 13C Wright, Miller & Cooper, *Federal Prac. & Proc. Juris.* § 3533.5 (3d ed.).

Here, the Plaintiffs are entitled to a permanent injunction and declaratory relief because there is no longer any doubt that they have succeeded on the merits of their RFRA claim given the Court's analysis in its preliminary injunction order, the government's concessions before the Supreme Court, the government's decision to voluntarily dismiss its appeal from this Court's preliminary injunction, and the legal conclusions announced in the government's recent IFR.

## I.   Plaintiffs meet the standard for obtaining a permanent injunction and declaratory relief.

*Actual Success on the Merits*. Plaintiffs' case has only gotten stronger since this Court granted a preliminary injunction. As before, the only issue before this Court is substantial burden. Nothing in the undisputed facts has changed to alter this Court's previous ruling that Plaintiffs have successfully shown that the mandate and the "accommodation scheme appl[y] substantial pressure on Plaintiffs to violate their belief[s]." *Reaching Souls*, 2013 WL 6804259, at *8. That alone is a sufficient basis to enter a permanent injunction. Moreover, the government now agrees with this Court's ruling that "that requiring . . . compliance through the mandate or accommodation . . .

constitute[s] a substantial burden on the religious exercise" of objectors like the Plaintiffs. 82 Fed. Reg. at 47,806. Thus, a permanent injunction and declaratory relief should enter.

Further, even if the government had not already conceded that its strict scrutiny defense is foreclosed by the Tenth Circuit's *Hobby Lobby* decision, the defense would still fail now. The government admitted to the Supreme Court that its interests would be satisfied if a woman can obtain coverage from "a family member's employer," "an Exchange," or "another government program." Br. for the Resp'ts at 65, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418). Thus, there can be no compelling government interest in forcing the Plaintiffs to provide the objectionable coverage. The Defendants also acknowledged that the mandate "could be modified" to avoid forcing religious organizations to carry the coverage themselves, Suppl. Br. for the Resp'ts at 14-15, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418), thereby undermining the "least restrictive means" argument. Those concessions were memorialized and expanded upon in the IFR, which admitted that the mandate "did not serve a compelling interest and was not the least restrictive means of serving a compelling interest." 82 Fed. Reg. at 47,806.

Accordingly, Plaintiffs have shown that the government's requirements "led to the violation of RFRA," *id.*, thereby showing actual success on the merits of their RFRA claim.

*Remaining Factors.* In the Tenth Circuit, showing a RFRA violation establishes irreparable harm. *Reaching Souls*, 2013 WL 6804259, at *8. And this Court's ruling in favor of Plaintiffs on the balance of harms prong is only clearer now, since the IFR shows that the government will not be harmed at all by granting a permanent injunction to the Plaintiffs. *Id.* Finally, upholding RFRA rights "is always in the public interest." *Hobby Lobby*, 723 F.3d at 1147; *accord O Centro v. Ashcroft*, 389 F.3d 973, 1010 (10th Cir. 2004) (en banc), *aff'd, Gonzales v. O Centro*, 546 U.S.

418 (2006) ("there is a strong public interest in the free exercise of religion"). Plaintiffs have therefore satisfied all of the factors for a permanent injunction and declaratory relief.

## II.   Entering a permanent injunction and declaratory relief is appropriate here.

With injunctions in place against the IFR, the operative law currently in place mandates that Plaintiffs choose between violating their sincerely-held religious beliefs and massive fines. 79 Fed. Reg. 51,092 (Aug. 27, 2014). Now that the government has admitted that this scenario violates RFRA, a permanent injunction and declaratory relief is appropriate.

Entering a permanent injunction here tracks what courts have done in parallel litigation. After the Supreme Court ruled that it was illegal for the government to enforce its mandate against closely held corporations, *see Burwell v. Hobby Lobby*, 134 S. Ct. 2751, 2784 (2014), for-profit corporations challenging the mandate obtained permanent injunctions from the lower courts. For example, after prevailing on appeal, Hercules Industries returned to the District of Colorado, which agreed to convert its preliminary injunction into a permanent injunction to protect Hercules from the mandate. *Newland v. Burwell*, 83 F. Supp. 3d 1122, 1125 (D. Colo. 2015).[2]

Similarly, following the Supreme Court's order in *Zubik* and the IFR, religious objectors have received permanent injunctions.[3] Just like the plaintiffs in these other cases, Plaintiffs here seek a

---

[2] *See also Grote Industries, LLC v. Burwell*, No. 4:12-cv-00134 (S.D. Ind. Apr. 30, 2015) (granting permanent injunction to for-profit objector); *Tonn & Blank Constr., LLC v. Burwell*, No. 1:12-cv-00325 (N.D. Ind. Nov. 6, 2014) (same); *Hartenbower v. HHS*, No. 1:13-cv-02253 (N.D. Ill. Nov. 3, 2014) (same); *Lindsay v. Burwell*, No. 1:13-cv-01210 (N.D. Ill. Dec. 3, 2014) (same).

[3] *See, e.g.*, *Roman Catholic Archdiocese of Atlanta v. Sebelius*, No. 1:12-cv-03489, 2014 WL 1256373, at *33-34 (N.D. Ga. Mar. 26, 2014) (issuing permanent injunction), *appeal dismissed sub nom. Roman Catholic Archdiocese of Atlanta v. Sec'y of U.S. Dep't of HHS*, No. 14-12890-CC (11th Cir. Nov. 7, 2017) (leaving injunction in place); *Roman Catholic Archbishop of Wash. v. Sebelius*, 19 F. Supp. 3d 48, 111 (D.D.C. 2013) (issuing permanent injunction for Thomas Aquinas College), *appeal dismissed sub nom. Priests for Life v. HHS*, Nos. 13-5368, 13,5371, 14-5021 (D.C. Cir. Nov. 6, 2017) (leaving injunction in place); *Perisco v. Sebelius*, No. 1:13-cv-00303 (W.D. Pa. Dec. 20, 2013) (issuing permanent injunction), *appeal dismissed sub nom. Perisco v.*

permanent injunction in their case so that they can stop focusing on litigation and instead focus on their religious missions. For the same reasons, declaratory relief is appropriate providing that requiring employers participating in the GuideStone plan, and GuideStone itself, to cooperate with the mandate would violate RFRA.

## CONCLUSION

Plaintiffs respectfully request that this Court grant their motion, enter an order converting Plaintiffs' preliminary injunction into a permanent injunction, and grant declaratory relief.

---

*Sec'y of U.S. Dep't of HHS,* Nos. 14-1376, 14-1377 (3d Cir. Oct. 20, 2017) (leaving injunction in place); *Brandt v. Burwell*, 43 F. Supp. 3d 462, 495 (W.D. Pa. 2014) (issuing permanent injunction), *appeal dismissed sub nom. Brandt v. Sec'y of U.S. Dep't of HHS* (3d Cir. Oct. 19, 2017) (Nos. 14-3663, 14-4087) (leaving injunction in place); *Catholic Diocese of Beaumont v. Sebelius*, 10 F. Supp. 3d 725, 736–37 (E.D. Tex. 2014) (issuing permanent injunction), *appeal dismissed sub nom. Catholic Diocese of Beaumont v. Hargan,* No. 14-40212 (5th Cir. Oct. 19, 2017) (leaving injunction in place); *Roman Catholic Archdiocese of N.Y. v. Sebelius*, 987 F. Supp. 2d 232, 259 (E.D.N.Y. 2013) (entering permanent injunction), *appeal dismissed sub nom. Catholic Health Care Sys. v. Hargan,* No. 14-427 (2d Cir. Oct. 17, 2017) (leaving injunction in place).

Respectfully submitted,

  /s/ Jared Giddens          
Jared D. Giddens
  Oklahoma Bar No. 3555
  jgiddens@cwlaw.com
Conner & Winters, LLP
1700 One Leadership Square
211 North Robinson
Oklahoma City, OK 73102
Tel:    (405) 272-5721
Fax:   (405) 232-2695

Mark Rienzi
  D.C. Bar No. 494336
  mrienzi@becketlaw.org
Daniel Blomberg
  Kansas Bar No. 23723
  dblomberg@becketlaw.org
THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 New Hampshire NW, Suite 700
Washington, DC 20036
Tel.:   (202) 955-0095
Fax:   (202) 955-0090

Carl C. Scherz
  Oklahoma No. 20420
  cscherz@lockelord.com
Seth Roberts
  Texas Bar No. 24051255
  sroberts@lockelord.com
Locke Lord LLP
2200 Ross Avenue, Suite 2200
Dallas, TX  75201
Tel.:   (214) 740-8583
Fax:   (214) 756-8583

COUNSEL FOR PLAINTIFFS REACHING SOULS INTERNATIONAL, INC., TRUETT-MCCONNELL COLLEGE, INC., AND GUIDESTONE FINANCIAL RESOURCES OF THE SOUTHERN BAPTIST CONVENTION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on February 16, 2018, the foregoing memorandum was served on all counsel of record via the Court's electronic case filing (ECF) system.

<u>/s/ Jared Giddens</u>